[No. A117772. First Dist., Div. Two. Jan. 31, 2008.]

In re LEE DALE CROCKETT on Habeas Corpus.

**COUNSEL**

Thomas C. Quinn for Petitioner Lee Dale Crockett.

Edmund G. Brown, Jr., Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, John G. McLean and Janet E. Neeley, Deputy Attorneys General, for Respondent the People.

**OPINION**

**LAMBDEN, J.**—Petitioner Lee Dale Crockett petitions for a writ of habeas corpus, contending that his conviction for failure to register as a sex offender pursuant to Penal Code section 290 was unlawful, and that he received ineffective assistance of counsel in the course of pleading to that charge. We grant the petition because Crockett's conviction was beyond the trial court's jurisdiction.

## BACKGROUND

Petitioner Crockett and respondent, the Director of the Department of Corrections and Rehabilitation, represented by the Attorney General, do not dispute the facts relevant to this petition.

## The Texas State Juvenile Court Adjudication

In 2001, a state juvenile court in Grayson County, Texas, adjudged petitioner to have intentionally and knowingly caused the penetration of the anus and mouth of his brother by his sexual organ, without his brother's consent. Petitioner was placed on probation for eight years, until March 2009. The Texas state juvenile court's conditions of probation, which petitioner acknowledged in writing having received and "fully understood," required him to register as a sex offender with authorities in Lake County, California, where petitioner was to reside with his mother.

Subsequently, the Grayson County Department of Juvenile Services requested services pursuant to the Interstate Compact on Juveniles (ICJ). Petitioner also submitted an application for services and waiver pursuant to the ICJ, in which he applied for probation supervision in California. In his application, he acknowledged "that the very fact that supervision will be in another state makes it likely that there will be certain differences between the supervision I would receive in this state and supervision which I will receive in any state to which I am asking to go," which differences he accepted. He agreed to "obey and live up to the terms and conditions of [probation] as fixed by both the sending and receiving states." Petitioner also acknowledged by his execution of a "Juvenile Sex Offender Registration Pre-Release Notification" form that he was required "to register with the law enforcement authority . . . in the city or county where you live or intend to live for more than seven days," and to register at the Clearlake Police Department in Lake County specifically.

Petitioner subsequently moved to Lake County, California. He apparently moved at some point thereafter to Mendocino County, California. Petitioner failed to register as a sex offender in either county.

## Felony Conviction in Mendocino County Superior Court

In 2004, petitioner was charged with a felony violation of Penal Code former section 290,[1] subdivision (g)(1), for his failure to register as a sex offender. (*People v. Crockett* (Super. Ct. Mendocino County, 2004, No. SCUK-CRCR-04-59780).) Although the record does not contain much from these proceedings, the parties agree that petitioner's purported registration obligation related to the offenses found by the Texas state juvenile court,

---

[1] All further unspecified code sections refer to the Penal Code. After petitioner's conviction and sentencing, the Legislature in 2007 repealed and reenacted Penal Code section 290's provisions, essentially renumbering and restating them in sections 290 to 290.023. We refer herein to section 290's provisions as they were numbered and stated at the time of petitioner's conviction and sentencing.

as opposed to a sex offense committed in California. Petitioner, represented by the Mendocino County Public Defender, pled to a felony charge of failure to register,[2] was convicted of the charge, and was placed on probation, also in 2004. Petitioner did not appeal his conviction or sentence.

### Proceedings in Lake County Superior Court

In December 2005, the Lake County District Attorney filed a criminal complaint in Lake County Superior Court alleging that petitioner failed to register as a sex offender in Lake County as required by former section 290, subdivision (a)(1)(A). In October 2006, the Lake County Superior Court declined to hold petitioner to answer the allegations because it concluded petitioner was not required to register as a sex offender by the terms of section 290, given his particular circumstances.

### Further Proceedings in the Mendocino County Superior Court

In May 2006, the Mendocino County Superior Court, apparently as a result of petitioner's failure to register as a sex offender in Lake County, revoked his probation and sentenced him to a term of 16 months in state prison, with credits for time spent in custody totaling 312 days. Petitioner represents that he was on parole as of the filing of his petition to this court in May 2007.

Petitioner's habeas corpus counsel declares that petitioner's trial counsel at the time he was convicted in 2004 did not advise petitioner that his juvenile adjudication in Texas might not be a registerable offense subject to penalty under section 290. Instead, trial counsel advised him that the case against him was not subject to doubt and that his only option was to plead guilty. Habeas corpus counsel further declares that he, counsel, was unaware of the issue until it was brought to his attention by the court in Lake County, in a discussion in chambers on September 8, 2006.

In September 2006, petitioner filed a petition for writ of habeas corpus in Mendocino County Superior Court. He argued that while he was obligated by Texas law to comply with the conditions of probation set by the Texas state juvenile court, his failure to register as a sex offender did not constitute a violation of section 290. The court denied this petition in December 2006, finding that under the terms of the documents provided to the court, the

---

[2] It is unclear whether petitioner pled "no contest" or "guilty" to the charge, as each is indicated in the papers submitted to us. Also, petitioner apparently was charged under subdivision (g)(1) of former section 290, which relates to misdemeanor violations, but was tried and convicted under subdivision (g)(2) of that code section, which relates to felony violations.

requirement that he register as a sex offender followed him to California, and mooted any argument that he would not have been required to register if he had been convicted in California.

### Petition to This Court

Petitioner filed his petition to this court in May 2007. According to his habeas corpus counsel, "[a]ny delay in filing of this petition . . . is based on the fact that counsel is employed primarily as a contract public defender with a busy trial practice and has had no prior experience with appellate writs and could not obtain the assistance of experienced appellate counsel. . . . Thus counsel was forced to research this process independently."

We issued an order to show cause to the respondent on July 20, 2007, and respondent elected to treat respondent's preliminary response as the return to the order to show cause.

## DISCUSSION

■ Petitioner presents two questions for our consideration. First, did the trial court lack jurisdiction to convict petitioner of failing to register as a sex offender under section 290 as a result of his adjudication in the Texas state juvenile court, conditions of probation, and move to California pursuant to the ICJ? Second, was petitioner denied effective assistance of counsel in the course of pleading to the subject charge such that his conviction must be reversed? We answer affirmatively to the first question and, therefore, we do not further address the second.

### A. Jurisdiction and Standard of Review

■ The state and federal Constitutions both guarantee that persons deprived of their liberty have the right to petition for a writ of habeas corpus. (U.S. Const., art. I, § 9; Cal. Const., art. I, § 11.) ■ " '[B]oth trial and appellate courts have jurisdiction over habeas corpus petitions, but a reviewing court has discretion to deny without prejudice a habeas corpus petition that was not filed first in a proper lower court.' " (*People v. Seijas* (2005) 36 Cal.4th 291, 307 [30 Cal.Rptr.3d 493, 114 P.3d 742].)

■ Preliminarily, we note that petitioner, as he acknowledges, has been somewhat delayed in the filing of this petition. A petitioner seeking relief on habeas corpus need only file a petition without substantial delay, or if delayed, adequately explain the delay. (*In re Harris* (1993) 5 Cal.4th 813, 828 [21 Cal.Rptr.2d 373, 855 P.2d 391]; *In re Clark* (1993) 5 Cal.4th 750, 783 [21 Cal.Rptr.2d 509, 855 P.2d 729].) Petitioner did not file his petition with this

court until May 2007, although he was convicted in 2004, his probation was revoked in mid-2006, he was aware of the jurisdiction issue discussed herein as early as September 2006, and he was denied habeas corpus relief by the Mendocino County Superior Court in December 2006. Nonetheless, petitioner has adequately explained his delay. His jurisdiction argument did not become known to his counsel until the court mentioned it in September 2006. This is understandable. We are unaware of any case which addresses the registration obligations of a juvenile who transfers to California after he or she has been placed on probation by another state's juvenile court, and agreed to continued supervision here pursuant to the ICJ. The one case directly relevant to the interpretation of section 290's applicability to juveniles, *In re Derrick B.* (2006) 39 Cal.4th 535 [47 Cal.Rptr.3d 13, 139 P.3d 485] (*Derrick B.*), was not published until August 2006. Thus, the legal analysis we discuss herein was far from clear. This is readily seen by the Mendocino County Superior Court's incorrect conclusion that it had jurisdiction and our California Supreme Court's reversal of an appellate court in *Derrick B.* We also conclude that petitioner's habeas corpus counsel's several months' delay in filing this petition after the trial court's December 2006 denial of his habeas corpus petition was not so dilatory as to prevent our review here, given the time he needed to meaningfully address the issues of this unique case.

■ We also note that petitioner did not appeal his conviction and sentence. The requirement of exhaustion of appellate remedies is "merely a discretionary policy governing the exercise of the reviewing court's jurisdiction to issue the writ." (6 Witkin & Epstein, Cal. Criminal Law (3d ed. 2000) Criminal Writs, § 22, p. 543, italics omitted; see *In re Black* (1967) 66 Cal.2d 881, 887 [59 Cal.Rptr. 429, 428 P.2d 293].) That said, generally, a petition for a writ of habeas corpus cannot serve as a substitute for an appeal, and, in the absence of special circumstances constituting an excuse for failure to employ that remedy, where claimed errors could have been raised on appeal, but were not, the petition should be summarily denied. (*In re Dixon* (1953) 41 Cal.2d 756, 759 [264 P.2d 513].) However, " '[f]undamental jurisdictional defects, . . . like constitutional defects, do not become irremediable when a judgment of conviction becomes final, *even after affirmance on appeal.*' " (*In re Harris, supra,* 5 Cal.4th at p. 840.)

■ Traditionally, habeas corpus addressed only strict jurisdictional issues. (*In re Harris, supra,* 5 Cal.4th at p. 836.) However, " 'California decisions make clear that the concept of fundamental jurisdictional error, for the purpose of a writ of habeas corpus, is no longer strictly limited to cases in which the trial court wholly lacks jurisdiction over the person of the defendant or the subject matter of the proceeding; the concept encompasses any error of sufficient magnitude that the trial court may be said to have acted *in excess of jurisdiction.*' " (*Id.* at p. 838.) Thus, " '[h]abeas corpus is available in cases where the court has acted in excess of its jurisdiction.

[Citations.] For purposes of [the writ of habeas corpus], the term "jurisdiction" is not limited to its fundamental meaning, and in such proceedings judicial acts may be restrained or annulled if determined to be in excess of the court's powers as defined by constitutional provision, statute, or rules developed by courts.' [Citation.] This view is consistent with the statutory scheme governing habeas corpus, which provides that a prisoner may be discharged from custody 'When the jurisdiction of [the committing] court . . . *has been exceeded.*' " (*Id.* at pp. 838–839, quoting § 1487.) Such an issue may be raised by habeas corpus, even if previously raised unsuccessfully on appeal. (*In re Harris*, at pp. 839–840.) As we discuss herein, we conclude that the trial court exceeded its jurisdiction in entering judgment against petitioner and, accordingly, petitioner's failure to appeal his conviction does not prevent us from reviewing his petition.

■ "The petitioner in a habeas corpus proceeding bears the ultimate burden of proving the factual allegations that serve as the basis for his or her request for habeas corpus relief." (*In re Rosenkrantz* (2002) 29 Cal.4th 616, 675 [128 Cal.Rptr.2d 104, 59 P.3d 174].) When a lower court considers the petition without conducting an evidentiary hearing, as was the case here, we independently review the record. (*In re Smith* (2003) 114 Cal.App.4th 343, 360–361 [7 Cal.Rptr.3d 655].) In any event, we review legal questions and mixed questions of fact and law independently. (*In re Johnson* (1998) 18 Cal.4th 447, 461 [75 Cal.Rptr.2d 878, 957 P.2d 299].)

B. *Analysis*

This case presents a dispute over law, and not over facts. Petitioner argues that the trial court lacked subject matter jurisdiction and acted in excess of the scope of section 290 when it imposed judgment on him for failure to register as a sex offender in Mendocino County. Respondent contends that petitioner's agreement to the conditions of probation imposed by the Texas state juvenile court and to ICJ requirements rendered him subject to the judgment imposed on him. We agree with petitioner that the trial court acted in excess of its jurisdiction because petitioner was not required to register as a sex offender in California under California law.

As we have already discussed, petitioner was convicted of violating former section 290, subdivision (g)(2).[3] That provision provided that a person who failed to register as required by section 290 pursuant to a juvenile adjudication was guilty of a felony. However, nothing stated in section 290 required petitioner, as a juvenile adjudicated in a Texas state juvenile court to have committed certain sex offenses and placed on probation, to register as a sex offender in California.

---

[3] Former section 290 subdivision (g)(2), is now restated as section 290.018, subdivision (b).

Section 290's inapplicability to petitioner was made clear by the California Supreme Court's analysis in *Derrick B., supra,* 39 Cal.4th 535. The court reversed an appellate ruling that Derrick B. was required to register pursuant to former section 290, subdivision (a)(2)(E), which stated in relevant part: "Any person ordered by any court to register pursuant to this section for any offense not included specifically in this section if the court finds at the time of conviction or sentencing that the person committed the offense as a result of sexual compulsion or for purposes of sexual gratification."[4]

The appellate court determined that the Legislature, in using the language "any court" and "any person," likely intended it to apply to juveniles as well as adults. The California Supreme Court disagreed, holding that the references to "conviction" and "sentencing" in former section 290, subdivision (a)(2)(E), "are terms of art usually associated with adult proceedings. Because the Legislature used these terms, we construe this subdivision as applying only in cases of adult convictions." (*Derrick B., supra,* 39 Cal.4th at p. 540.) The Supreme Court held that "a juvenile offender may not be ordered to register as a sex offender under [section 290] if his offenses are not among those listed in subdivision (d)(3)." (*Id.* at p. 537.)

Respondent concedes that petitioner was not required to register as a sex offender under former section 290, subdivision (d):[5] "It is undisputed that absent the [ICJ] agreement, petitioner would not have to register as a sex offender in California. Juveniles adjudicated in California must register for a list of more serious sex offenses, and petitioner's offenses are among those requiring registration in California. ([Former] § 290, subd. (d).) However, registration for one of the listed offenses is required only if the juvenile was also incarcerated at the California Youth Authority, now the Division of Juvenile Justice . . . (DJJ). Juveniles who are adjudicated in other states as sex offenders must be incarcerated at the other state's equivalent institution of DJJ. ([Former] § 290, subd. (d)(2).) Petitioner was not sent to a Texas institution that is the equivalent of DJJ. Thus, even though his offenses are among those requiring registration for the juveniles here, because he was not sent to a Texas institution that is the equivalent of DJJ, he would not be required to register in California absent his agreement to do so pursuant to the [ICJ]." Thus, respondent argues that "petitioner is required to register as a sex offender in California only because he agreed to that requirement as a condition of probation in the transfer agreement, pursuant to the [ICJ]."

Respondent's argument cannot be maintained. While petitioner acknowledged in writing prior to moving to California that he understood he was

---

[4] Former section 290, subdivision (a)(2)(E), is now restated as section 290.006.

[5] Former section 290, subdivision (d), is now restated as section 290.008.

required to register as a juvenile sex offender with local authorities wherever he lived, and with the Lake County Sheriff's Department specifically, we are not aware of any authority, nor does respondent provide us with any, that allows a California state court to find a felony violation of section 290 based upon such an agreement. To allow a court to do so would be to improperly expand the scope of jurisdiction granted to it by the Legislature in section 290, given our Supreme Court's interpretation of the statute in *Derrick B.*, *supra*, 39 Cal.4th 535.

■ The terms of the ICJ do not confer any special authority on a California court to require sex offender registration in California based upon the order of a Texas state juvenile court. To the contrary, it actually prohibits California authorities from applying different supervision standards on petitioner than it would on its own juvenile probationers. The ICJ is codified in California in Welfare and Institutions Code sections 1300 to 1308.[6] The purpose of the ICJ, as stated in Welfare and Institutions Code section 1300, is to facilitate the cooperation of member states "to provide for the welfare and protection of juveniles and of the public with respect to (1) cooperative supervision of delinquent juveniles on probation or parole . . . ." (Welf. & Inst. Code, § 1300, art. I.) Welfare and Institutions Code section 1300 specifically provides that "each receiving state will assume the duties of visitation and of supervision over any such delinquent juvenile *and in the exercise of those duties will be governed by the same standards of visitation and supervision that prevail for its own delinquent juveniles released on probation or parole.*" (Welf. & Inst. Code, § 1300, art. VII, subd. (b), italics added.) ■ Thus, the express terms of section 1300 prohibit California authorities from exercising ICJ supervision powers under standards that are different from those they apply to their own delinquent juveniles released on probation.[7] We think this

---

[6] In discussing the ICJ, respondent cites to both Welfare and Institutions Code section 1300 and the Web site of the Association of Juvenile Compact Administrators (AJCA), <http://www.ajca.us> (as of Jan. 31, 2008). We take judicial notice that the AJCA site contains information on revisions to the ICJ between 2000 and 2002 by the Council of State Governments. Welfare and Institutions Code section 1300 provides that our "Governor is authorized and may execute for, on behalf of, and in the name of the State of California, a compact or agreement entitled, 'Interstate Compact on Juveniles,' which compact or agreement, in words and figures, is substantially as follows . . ." (Welf. & Inst. Code, § 1300), and that "duly constituted administrative authorities of a state party to this compact may enter into supplementary agreements with any other state or states party hereto" (*id.*, § 1300, art. X). Welfare and Institutions Code section 1303 contains similar authority regarding supplementary agreements. However, respondent has not established that California has adopted these revisions.

[7] Indeed, this ICJ language is reflected in the application for ICJ services and waiver submitted by petitioner when he was in Texas. As we have already discussed, he acknowledged in writing "that the very fact that supervision will be in another state makes it likely that there will be certain differences between the supervision I would receive in this state and supervision

prohibition bars authorities from requiring juveniles arriving on probation from other states to register as sex offenders based on orders from another state's court, if that requirement would not be imposed on a juvenile adjudicated by a California court under the same facts and circumstances.

Respondent cites *People v. Reed* (1994) 23 Cal.App.4th 135 [28 Cal.Rptr.2d 509]. However, that case actually supports granting the petition. In *Reed*, the defendant had been granted probation in Nevada. After the defendant moved to California pursuant to the Uniform Act for Out-of-State Probationer or Parolee Supervision (§ 11175 et seq.), her California probation officer and a deputy sheriff found illicit narcotics in her home, leading to her arrest and conviction. The defendant argued to the trial court that the incriminating evidence should be suppressed because Nevada and federal law required a reasonable suspicion of guilt as a prerequisite to a probation search. The trial court denied the motion because California law permitted warrantless probation searches unless conducted in an unreasonable manner or for harassment. The Court of Appeal affirmed, holding that "by entering this state under the auspices of the Uniform Act defendant consented to be bound by California rules governing probationers." (*People v. Reed, supra*, at p. 140.) Here, while petitioner may have agreed to abide by the Texas state juvenile court's conditions of probation in California, he nonetheless is not required to register as a sex offender *under California law*. It could be that petitioner's failure to register here amounts to a violation of his conditions of probation or the ICJ, but the consequence of such violations is not a court judgment finding him guilty of a felony under section 290.

Respondent further argues that California accepted petitioner after his express agreement to register as a sex offender while on supervision in California, and might not have done so without this requirement. Respondent does not explain how this confers jurisdiction on the Mendocino County Superior Court to enter judgment against petitioner for a violation of section 290, however.

Respondent points to the Department of Justice sex offender registration database, which automatically alerts law enforcement when a sex offender in a jurisdiction has failed to register within the appropriate timeframe. He argues that false arrests will likely occur if the court holds that certain registrants cannot be arrested for violating the law. This argument lacks merit.

which I will receive in any state to which I am asking to go," which differences he accepted. He agreed to "obey and live up to the terms and conditions of [probation] as fixed by both the sending and receiving states."

Nothing in our ruling prevents law enforcement officers or our courts from vigorously enforcing section 290, but they must do so only with regard to what the statute actually criminalizes.

Respondent points out that the Out-of-state Confinement Amendment to the Interstate Compact on Juveniles provides that, rather than being returned to the sending state, a juvenile probationer or parolee may be confined in an appropriate institution in the receiving state (Welf. & Inst. Code, § 1300.3, subd. (a)), a provision which "clearly contemplates that the juvenile will be subject to the laws of the receiving state during the supervised release period covered by the compact." Respondent's citation implies this provision supports respondent's position. It does not because, as we have already discussed, petitioner did not violate any California law by his failure to register.

Respondent also argues that if this court does not uphold the trial court's ruling requiring petitioner to register, California "would have no means of protecting its own citizens from sex offenders whom it agreed to accept pursuant to Interstate Compact only under terms that specified sex offender registration." Respondent points out that, pursuant to Welfare and Institutions Code section 1300.3, California cannot compel a sending state to remove a probationer due to a failure to comply with sex offender registration law here. Respondent contends that if California cannot enforce a probationer's duty to register as a sex offender by charging the person with a violation of law, nor compel the sending state to accept the person's return, California is without recourse and a public safety hazard is created. Once more, respondent's argument presumes a violation of California law, which did not occur here. We also note that the risk described by respondent only applies to those out-of-state juveniles who were not committed to an institutional equivalent to the DJJ (Division of Juvenile Justice), as was provided by former section 290, subdivision (d)(2). Regardless, this was a risk assumed by the Legislature when it limited registration to a particular group of juvenile offenders in section 290. As our Supreme Court states in *Derrick B., supra*, 39 Cal.4th 535, "the Legislature may have acted intentionally or through inadvertence. If the latter, the Legislature may correct its oversight, but it is not our role to do so." (*Id.* at p. 546.)

## DISPOSITION

Petitioner's petition is granted and the judgment against him in *People v. Crockett*, Mendocino County Superior Court, case No. SCUK-CRCR-04-59780 is hereby vacated. We remand this matter to the trial court for further proceedings consistent with this opinion.

Nothing herein should be construed as preventing California law enforcement authorities or our courts from taking actions related to the supervision of petitioner's probation pursuant to the ICJ or to the Texas state juvenile court adjudication and that court's conditions of probation.

Kline, P. J., and Haerle, J., concurred.